MHN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BROTHERS FOOD & LIQUOR, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 07 C 3588 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On March 29, 2007, the Food and Nutrition Service (FNS) of the United States Department of Agriculture (USDA) notified Plaintiff Brothers Food & Liquor, Inc., a store located in Chicago, that it was permanently disqualified from participating in the FNS Food Stamp Program because it allegedly engaged in food stamp trafficking. Plaintiff appealed that decision to the agency's Administrative Review Division and an Administrative Review Officer affirmed the disqualification on May 29, 2007. Plaintiff brought this lawsuit seeking judicial review of the FNS decision. Defendant now moves for summary judgment. For the reasons set forth below, the Court grants that motion in part and denies it in part.

### *BACKGROUND*

In June 2003, Khaled Abu Dayeh bought the Brothers Food and Liquor store and in August of that year he applied for authorization to accept federal food stamp benefits. Food stamp benefits are delivered to recipients on encoded Electronic Benefits Transaction (EBT) cards which recipients swipe through a reader in order to pay for eligible items, such as bread, dairy products, meat, and vegetables. 7 C.F.R. § 271.2 (providing definitions for eligible items); *see also* 7 U.S.C. § 2018(a)(2)(B) (authorizing issuance of regulations concerning eligible items).

1

As part of his application, Abu Dayeh acknowledged that exchanging cash for food stamp benefits was illegal and could result in permanent disqualification. He also agreed that Brothers Food could only accept EBT payment for food stamp eligible items, and that trading EBT benefits for cash or non-eligible items was a violation of the Food Stamp Program regulations. Food Stamp Program regulations prohibit such transactions as trafficking in food stamp benefits. 7 C.F.R. § 271.2. A store which violates those regulations is subject to permanent disqualification barring a discretionary decision by the Secretary of Agriculture following a determination that there is substantial evidence that the store had an effective policy and program in effect to prevent such violations. 7 U.S.C § 2021(b)(3)(B).

As part of the application process, the USDA conducted a survey of the store. Brothers Food and Liquor is a small liquor and grocery store. The USDA found it to be moderately stocked with staple goods, including bread, milk, some fresh produce, and some fresh meat product that consisted of "cold cuts only" according to Plaintiff's original application. There was one register located behind a plexi-glass partition, with limited counter space and no optical scanners or adding machines. The agency approved the store for the Food Stamp Program on September 4, 2003.

The FNS Chicago field office subsequently reviewed its records of the EBT food stamp redemptions at the store during the period between October 2006 and December 2006 and found a number of transactions that caused the agency some concern. First, it found forty instances of rapid, consecutive withdrawals made from multiple accounts in four minutes or less. Most of these withdrawals exceeded one hundred dollars per instance. Second, it found fifty-nine instances where multiple withdrawals totaling more than ninety-five dollars were made from a single account within forty-eight hours or less. In two of these instances, more than four hundred

dollars worth of benefits were withdrawn from one account over the course of seven or ten transactions. Many of the transactions took place late at night.

In order to understand how such rapid and high-dollar transactions were possible, FNS conducted another store survey on February 6, 2007. This survey revealed no major changes in the store's inventory or equipment. The FNS did note, however, that the store did not have a point of service (POS) device, which is essential for processing EBT card transactions. Given the size and limited inventory of the store, and the limits on the store's ability to process transactions, the FNS issued a charge letter on February 15, 2007. In the letter, FNS charged Plaintiff with food stamp trafficking violations, provided notice of the basis of these charges, and provided Plaintiff with ten days to submit substantial evidence showing that the store had an effective policy and program in place to prevent food stamp trafficking violations if Plaintiff wished to pay a penalty in lieu of permanent disqualification.

Plaintiff did not submit any evidence before the expiration of that ten-day period because Abu Dayeh was out of the country from February 7th through March 1st of that year. Upon his return, Abu Dayeh called FNS and scheduled a meeting for March 6th to respond to the charges. During that meeting, Abu Dayeh explained that the store had two cash registers and, during busy hours, two separate baggers. He confirmed that he had no optical scanners, but claimed that, contrary to the observations of the FNS, he did have a POS device, one shopping cart, and three shopping baskets. He also said that he offered his customers the opportunity to make orders for fresh meat packages ranging in price from $29.95 - $59.95 that were delivered to the store by an outside vendor. FNS gave Abu Dayeh some additional time to prepare a written response and provide supporting documentation. Later that month, he provided copies of invoices and receipts from the store, along with a letter from his attorney.

3

FNS was able to verify that the store did in fact have a second cash register, but that it was located behind plexi-glass with only a small slot in it through which a customer could slide payment. FNS also found a shopping cart, but when FNS surveyed the store it was full of cardboard boxes and seemed to be too wide to be rolled down the aisles. Abu Dayeh was not able to provide any additional information about his meat vendor besides handwritten receipts that lacked any identifying information. His claims about how much meat was delivered seemed undermined by the fact that FNS observed little storage space for meat, no packages fitting Abu Dayeh's description, and no advertisements for such packages. Moreover, FNS conducted an analysis of the store's receipts using mark-up rates provided by Plaintiff[1] and found that the store's monthly food stamp redemptions either exceeded or came "uncharacteristically close" to the total amount of inventory purchased for the month. Based on these findings, FNS concluded that Plaintiff had engaged in food stamp trafficking and, on March 29, 2007, permanently disqualified the store from the program. An Administrative Review Officer upheld the disqualification in a decision dated May 29, 2007.

In preparation for this case, Defendant deposed Abu Dayeh and another store employee, Calvin Barbee. In his deposition, Abu Dayeh gave explanations similar to those provided to FNS in March 2007. However, he was still unable to identify his vendor or any of his customers who purchased meat packages with any specificity. Barbee was similarly unable to identify the meat vendor, despite the fact that Barbee was supposedly the meat packager for the store. On the basis of these facts, in addition to those mentioned above, and some inconsistencies noted in the depositions, Defendant moves for summary judgment as to the issue of food stamp trafficking.

---

[1] These mark-up rates were estimates and conflicted with other rates provided by Plaintiff.

4

## DISCUSSION

### I. Standard of review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. V. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

In this case, Plaintiff challenges a final agency decision by FNS pursuant to 7 U.S.C. § 2023(a)(13). The parties agree judicial review of the administrative finding of a trafficking violation shall entail a trial *de novo* by the Court. *Id.* at (a)(15). This right is afforded to the Plaintiff because the relevant statute does not provide for an evidentiary hearing at the administrative level. *McGlory v. U.S.*, 763 F.2d 309, 310-11 (7th Cir. 1985) (internal citation omitted). Thus, when a Plaintiff challenges the finding of a violation of the Food Stamp Program regulations, the district court "must determine the validity of the agency's factual determinations anew, on a fresh record." *Id.* at 311. Plaintiff has the burden of proving by a preponderance of the evidence on this fresh record that the administrative decision was invalid

because violations did not occur. *Brooks v. U.S. Dept. of Agriculture*, 841 F. Supp. 833, 839 (N.D. Ill. 1994) (citing *Abdel v. U.S.*, 670 F.3d 73, 76 n.8 (7th Cir. 1982) and *Redmond v. U.S.*, 507 F.2d 1007, 1011-12 (5th Cir. 1975)); *see also Kim v. U.S.*, 121 F.3d 1269, 1272 (9th Cir. 1997) *and Warren v. U.S.*, 932 F.2d 582, 586 (6th Cir. 1991). However, if the Court finds a violation, it will give deference to the agency when reviewing the imposition of a penalty. *McGlory*, 763 F.2d at 311. The Court may only overturn a penalty if it is arbitrary and capricious. *Id.*

## II. Analysis

Plaintiff seeks judicial review of the administrative decision on two grounds. First, Plaintiff claims that FNS did not have sufficient grounds for finding that Plaintiff engaged in food stamp trafficking. Second, Plaintiff argues that even if that finding was proper, the imposition of a permanent disqualification was arbitrary and capricious. Defendant moves for summary judgment on both issues.

### A. Plaintiff's alleged food stamp trafficking

In this case, the Court must rely solely on Defendant's Local Rule 56.1 Statement of Facts in evaluating whether there are sufficient grounds for finding that Plaintiff engaged in food stamp trafficking. This is because Plaintiff failed to provide a response to Defendant's statement or any additional facts pursuant to Local Rule 56.1(b)(3). Moreover, while all of Plaintiff's arguments on this point pertain to the facts of the case and the inferences which may be drawn from those facts, Plaintiff never once cites to the record. Plaintiff fails to even cite with any specificity to the exhibits attached to Defendant's statement. If Plaintiff wishes to rely solely on argument in disputing Defendant's motion, and does not wish to set forth its own statement of facts, it may. However, "district courts are not obliged…to scour the record looking for factual

disputes," *Flaherty v. Gas Research Institute*, 31 F.3d 451, 453 (7th Cir. 1994) (quoting *Waldridge v. Amer. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (referencing predecessor to Local Rule 56.1 that contained identical relevant language), and "[j]udges are not like pigs, hunting for truffles buried in briefs," *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). The Court thus deems all material facts submitted by Defendant as admitted by Plaintiff for purposes of deciding this motion, and provides a brief recitation of these facts below.

However, Defendant does not automatically prevail on its motion as a result of Plaintiff's failure. Even when accepting Defendant's version of the facts, the Court must view those facts and any inferences which may be drawn from them in the light most favorable to the Plaintiff. *Anderson*, 477 U.S. at 255. Here, most of the argument between the parties is about the inferences which may be drawn from the facts.

Defendant argues that Brothers' customers could not have legitimately engaged in the type of rapid, high dollar transactions it found in its investigation unless Plaintiff engaged in trafficking. Defendant argues that high dollar transactions are impossible because Brothers is small and has a limited amount of inventory eligible for food stamps. It discounts claims that Brothers provided relatively expensive meat packages because of the lack of evidence to support these claims and the inconsistencies in deposition testimony. It also points to Plaintiff's limited means for carrying groceries, and the lack of space to set groceries down in front of the windows as evidence that customers could not purchase large loads of groceries. Because the store contains only two cash registers, one of which is behind a plexi-glass window, and no optical scanners or adding machines, Defendant argues that legitimate rapid transactions are also impossible. Defendant also finds it unlikely that so much of this high-dollar, rapid business would take place late at night. Finally, Defendant points to Plaintiffs' records, showing monthly

7

food stamp redemption amounts as higher than or "uncharacteristically close" to the amount spent on inventory each month. Defendant argues that this is highly unlikely if Plaintiff is not engaging in illegitimate activity because it would mean that virtually all of Plaintiff's business comes in the form of food stamp benefits.

Plaintiff, on the other hand, argues that there are legitimate explanations for all of the evidence presented by Defendant. Plaintiff references the deposition testimony about the expensive meat packages as evidence that high-dollar transactions are possible. Plaintiff argues that with two cash registers and two cashiers, it is possible to process transactions rapidly. Plaintiff points to the shopping cart and deposition testimony regarding shopping baskets as evidence that customers could bring larger loads of groceries to the front of the store. Plaintiff blames the poor bookkeeping practices of a small store and Defendant's inaccurate analysis using mark-up estimates for the "uncharacteristic" oddities in Plaintiff's records noted by Defendant. Plaintiff argues that numerous transactions on the same account in a short period of time can be explained by large families using the same EBT card.

Some of Plaintiff's explanations do rest in part on claims which are unsupported by the record. For instance, Plaintiff relies at times on deposition testimony by a store employee whose deposition was not attached to Defendant's statement of facts. Plaintiff also makes numerous claims about how the neighborhood demographics and economic circumstances affect the way customers make use of the store. While Plaintiff's claims may all be true, Plaintiff's argument is hurt by its failure to provide the Court with a statement of facts. The Court has not given any weight to assertions by Plaintiff which are an unsupported by the record.

Nonetheless, many of Plaintiff's arguments relate instead to inferences which may be drawn from the facts set forth by Defendant. Defendant's inferences may well be more

persuasive than Plaintiff's. However, unless Plaintiff's inferences are completely unjustifiable, the Court must at this point draw all inferences in Plaintiff's favor. *Anderson*, 477 U.S. at 255.

Defendant argues that Plaintiff's inferences and conclusions are not believable because they rely on statements by Abu Dayeh and Barbee that are contradictory and therefore not credible. Abu Dayeh and Barbee may not be credible witnesses. In fact, they may have lied during their depositions. However, the Court may not make credibility determinations or weigh evidence when ruling on a motion for summary judgment. *Id.* Such is the function of a trier of fact following a full trial. *Id.* As noted above, Defendant can rest assured that Plaintiff will bear the burden of proving that it did not violate the Food Stamp Program regulations at that trial. *Brooks*, 841 F. Supp. at 839.

The Court once again admonishes Plaintiff for failing to cite to the record in its brief. However, the Court will not turn a blind eye to the fact that Plaintiff has presented some justifiable inferences which call into question whether it actually engaged in food stamp trafficking. As a result, when viewing the evidence submitted by Defendant in the light most favorable to Plaintiff, Defendant is not entitled to judgment as a matter of law. Thus, the Court denies Defendant's motion for summary judgment as to the issue of whether Plaintiff engaged in trafficking.

## B. Plaintiff's permanent disqualification from the Food Stamp Program

The procedural stance of this case will not save Plaintiff from its own failures in briefing the issue of the penalty imposed upon it, however. The Court may only overrule a penalty imposed upon a store under the Food Stamp Program if it was arbitrary and capricious. *McGlory*, 763 F.2d at 311. Moreover, the statutes underlying the Food Stamp Program require permanent disqualification of a store which engages in food stamp trafficking with one

9

exception. 7 U.S.C § 2021(b)(3)(B). Stores are excepted from permanent disqualification only by the discretion of the Secretary of Agriculture following a determination that there is substantial evidence that the store had an effective policy and program in effect to prevent such violations. *Id.* Thus, the Court can only rule in Plaintiff's favor on this point if it finds that this discretionary decision was arbitrary and suspicious.

Defendant's statement of facts, deemed admitted for purposes of deciding this motion, shows that FNS not only allowed Plaintiff ten days to provide the type of evidence that might warrant an exception, but extended this period and granted Plaintiff a meeting once it learned that Plaintiff was out of the country during the original ten day period. Nonetheless, Plaintiff provided nothing more than invoices and receipts, along with a letter from his attorney, in response. This documentation not only failed to provide any evidence that Plaintiff had an effective policy and program in effect to prevent trafficking violations, but it added to the suspicions of the FNS that Plaintiff had engaged in trafficking. On this issue, the Court is not faced with deposition testimony which it must take in the light most favorable to Plaintiff. The Secretary's discretionary decision was based not on deposition testimony conducted during the discovery phase of this lawsuit, but on the information Plaintiff provided in response to the original FNS request. Plaintiff has provided no evidence to dispute Defendant's statement of facts regarding this response, and has pointed to nothing in Defendant's statement of facts which indicates that the agency committed such an abuse of discretion as to make this penalty arbitrary and capricious.

Given that the Court has denied summary judgment on the issue of whether Plaintiff did in fact commit a violation of the Food Stamp Program regulations, the Court cannot yet make a final decision on whether Plaintiff is to be permanently disqualified from the Food Stamp

Program. However, assuming for the moment that Plaintiff did in fact engage in food stamp trafficking, the Court grants judgment as a matter of law to Defendant on the issue of whether the permanent disqualification of Plaintiff was arbitrary and capricious. Thus, if Plaintiff fails to meet its burden of showing that it is innocent of any violation, the permanent disqualification will stand.

## CONCLUSION

For the above reasons, the Court denies Defendant's motion for summary judgment on the issue of whether Plaintiff violated the Food Stamp Program regulations, and grants the motion on the issue of whether Plaintiff's permanent disqualification was arbitrary and capricious.

IT IS SO ORDERED.

6/3/09
Dated

Hon. William J. Hibbler
United States District Court